UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
RUSH INDUSTRIES, INC.,

        Plaintiff,

-against-

GARNIER LLC and JOHN DOES 1-5,

        Defendants.
----------------------------------------X

MEMORANDUM AND ORDER

CV 05-4910

(Wexler, J.)

APPEARANCES:

    DANIEL P. BURKE & ASSOCIATES, PLLC
    BY: DANIEL P. BURKE, ESQ.
    300 Rabro Drive, Suite 131
    Hauppauge, NY 11788
    Attorneys for Plaintiff

    PAUL, HASTINGS, JANOFSKY & WALKER LLP
    BY: ROBERT L. SHERMAN, ESQ.
    75 East 55th Street
    New York, New York 10022
    Attorneys for Defendant

WEXLER, District Judge

    This is a trademark infringement action commenced by Plaintiff Rush Industries, Inc. ("Plaintiff" or "Rush Industries") against Defendant Garnier LLC ("Defendant" "Garnier"). Plaintiff alleges infringement and related claims arising out of Garnier's use of the words "Long 'n Strong" in connection with its "Garnier Fructis" hair care products.

    Presently before the court are the Defendant's motion for summary judgment, Plaintiff's motion to strike portions of Defendant's summary judgment papers and Defendant's motion to strike Plaintiff's jury demand. For the reasons that follow, the motion for summary judgment is

1

granted and the case is dismissed in its entirety.

## BACKGROUND

I.   <u>The Parties and Their Products</u>

Plaintiff, a corporation with its principle place of business in this district, markets various products via the internet, including a hair care line consisting of three products marketed under the name "Long 'n Strong." This line includes shampoo and hair treatment products. While the exact date when Plaintiff began marketing products under the Long 'n Strong name is unclear, the court will construe the facts in favor of Plaintiff and assume, for the purpose of this motion, that products bearing this name have been marketed continuously since 1997. During the relevant time period Plaintiff's products have not been sold in retail stores but were available only via phone order, mail order and the internet.

Plaintiff packages its Long 'n Strong hair care products in plain white bottles bearing the "Long 'n Strong" name as well as the name "Long 'n Strong eXtra." These names appear in different sizes and fonts but are consistently the predominant feature of Plaintiff's packaging, taking up more than half of the bottle. The standard selling price of Plaintiff's shampoo, during the relevant time period, was approximately $9.95 for an eight ounce bottle. The treatment sold for approximately $14.95 for a six ounce bottle. These price points exceed the prices for Defendant's hair care products.

Defendant Garnier is wholly owned by L'Oreal, USA and markets a variety of hair care products under the "Garnier Fructis" name. Garnier has sold products under the Garnier Fructis label since the 1990's. The products are packaged in bright green bottles and are marketed in large retail stores including Wal-Mart, CVS and Walgreens. Hair care products sold under the

Fructis line include those with packaging bearing the Fructis brand name and descriptive terms such as "Sleek & Shine," "Curl & Shine," "Body & Volume," and, the descriptive name at issue here, "Long & Strong." These descriptive labels appear on bottles and other containers in a distinctive blue rectangle set against the bright green background of the container. The same color and font is always employed, as is the ampersand connecting the descriptive terms. Garnier Fructis products bearing the descriptive term "Long and Strong" were introduced into the United States market in 2004.

II. <u>Plaintiff's Initial Contact With Defendant</u>

Prior to marketing products including the words "Long & Strong," Garnier conducted a trademark search which is before the court. That search did not reveal Plaintiff's use of the Long 'n Strong name. The search did, however, reveal a different company's application to register the words as a trademark. Garnier negotiated with that company which thereafter withdrew its application.

In April of 2005, Plaintiff's counsel contacted counsel for Garnier and complained that Garnier was infringing Plaintiff's right to the use of the "Long 'n Strong" name. While it is clear that the parties had discussions regarding the use of the words at issue prior to institution of this lawsuit, the court will not characterize the nature of those discussions. In any event, it is clear that the parties' discussions bore no fruit as to settlement and Plaintiff commenced this action.

III. <u>The Allegations of the Complaint and Garnier's Abandonment of the Words at Issue</u>

Plaintiff alleges that Defendant's use of the words "Long & Strong" on its Garnier Fructis products infringes Plaintiff's common law trademark right to use the "Long 'n Strong" name in connection with hair care products. Specifically, the complaint alleges a federal claim for

3

trademark infringement pursuant to the Lanham Act, 43 U.S.C. §1125. Plaintiff's complaint also sets forth New York State law claims for infringement pursuant to Section 133 of the New York State General Business law and unfair competition under the common law of the State of New York.

Shortly after commencement of this action, Garnier abandoned use of the "Long & Strong," words and, instead, began to market its products with the descriptive term "Length & Strength" appearing in the blue rectangular box on its green bottles. Garnier states that it made the decision to change the name of its products to avoid any further dispute with Plaintiff and not because of any acknowledgment of liability.

IV. The Motions

Defendant moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. Additionally, Defendant has moved to strike Plaintiff's jury demand. Both of Defendant's motions attack an essential element of Plaintiff's case, arguing that Plaintiff is unable, as a matter of law, to show any likelihood of confusion between the parties' products. This failure is alleged to be fatal to both the claim on the merits and the right to a jury trial. Plaintiff moves to strike certain portions of Defendant's summary judgment papers. In support of this motion, Plaintiff argues that Defendant is attempting to establish an "advice of counsel" defense by improper reliance on documents specifically shielded from discovery by the attorney client privilege.

After outlining relevant legal principles, the court will turn to the merits of the motions.

## DISCUSSION

I. <u>Legal Principles</u>.

A. <u>Standard on Motion for Summary Judgment</u>

Summary judgment is properly granted "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute regarding as material fact exists if a reasonable jury could return a verdict in favor of the non-moving party. <u>Weinstock v. Columbia University</u>, 224 F.3d 33, 41 (2d Cir. 2000). It is for the moving party to demonstrate the absence of a material issue of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Donohue v. Windsor Locks Bd. of Fire Comm'rs.</u>, 834 F.2d 54, 57 (2d Cir. 1987). Once that burden is met, the non-moving party must come forward with "specific facts" showing there is an issue to be tried. Fed. R. Civ. P. 56(e). In the context of a summary judgment motion the court is to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

Defendant's summary judgment motion is based upon the argument that Plaintiff cannot prove the element of likelihood of confusion. Where key facts regarding this issue are clear and beyond dispute, it is appropriate to decide the matter in the context of a motion for summary judgment. See, e.g., <u>Playtex Prods., Inc. v. Georgia-Pacific Corp.</u>, 390 F.3d 158, 161 (2d Cir. 2004); <u>Lang v. Retirement Living Publishing Co., Inc.</u>, 949 F.2d 576, 579 (2d Cir. 1991); <u>Omicron Capital, LLC v. Omicron Capital, LLC</u>, 433 F. Supp.2d 382, 388 (S.D.N.Y. 2006); <u>Vista Food Exchange, Inc. v. Vistar Corp.</u>, , 2005 WL 2371958 *3 (E.D.N.Y. 2005).

B.  Trademark Infringement

To prevail on a claim for infringement under the Lanham Act, a plaintiff must show: (1) that it possesses a valid mark entitled to protection and (2) that Defendant's use is likely to cause confusion as to the source or sponsorship of the product. Playtex, 390 F.3d at 161; Morningside Group Ltd. v. Morningside Capital Group, 182 F.3d 133, 137 (2d Cir. 1999). Defendant concedes, for the purpose of this motion only, the validity of Plaintiff's mark. The motion argues, however, that Plaintiff cannot, as a matter of law, show likelihood of confusion. It is this element, therefore, upon which the court will focus.

The "key" to proving trademark infringement is a showing of the likelihood of consumer confusion. Brennans, Inc. v. Brennan's Restaurant, LLC, 360 F.3d 125, 128 (2d Cir. 2004). Likelihood of confusion exists only if "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." Playtex, 390 F.3d at 161, quoting, Cadbury Beverages v. Cott Corp., 73 F.3d 474, 477-78 (2d Cir. 1996); Vista Food Exchange, 2005 WL 2371958 *3 (probability of confusion exists where a "large number of purchasers likely will be confused as to the source of the goods"). A finding of likelihood of confusion requires a "probability" of confusion, rather than a "mere possibility." Id.

The factors to consider when determining likelihood of confusion are set forth in the seminal case of Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961). The Polaroid factors are:

- the strength of the plaintiff's mark;
- the degree of similarity between the two marks;

6

- the competitive proximity of the products;
- actual confusion;
- the likelihood that plaintiff will bridge the gap between the markets in which the products are sold;
- the defendant's good faith in adopting the mark;
- the quality of defendant's products, and
- the sophistication of purchasers.

Polaroid, 287 F.2d at 495. The Polaroid factors are not an exhaustive list and no one factor is dispositive. Playtex, 390 F.3d at 161. Instead, "each factor must be considered in the context of others, and balanced to determine whether a likelihood of confusion exists." Lang, 949 F.2d at 580. In a clear case, summary judgment may be appropriate even without consideration of each of the Polaroid factors. Playtex, 390 F.3d at 167.

II. Plaintiff's Motion to Strike

Before reaching the merits of the summary judgment motion, the court disposes of Plaintiff's motion to strike portions of Defendant's summary judgment papers. In support of this motion, Plaintiff argues that Defendant is improperly attempting to establish an "advice of counsel" defense to the trademark infringement claim by improperly relying on documents shielded by the attorney client privilege.

Plaintiff's motion is denied. First, it is clear that Defendant does not rely on any advice of counsel defense with respect to Plaintiff's use of the words at issue. Because Defendant's trademark search never revealed Plaintiff's use of these words, Garnier could not have even sought advice as to whether or not their intended use might infringe upon that of Plaintiff. While

7

Defense counsel may have negotiated with a third party as to its use of the Long & Strong name, those negotiations and any documents pertaining thereto are irrelevant with respect to Plaintiff. The only reason that this court considers the issue of the trademark search is when determining Garnier's good faith in adopting the mark, vis a vis the Plaintiff, in connection with the <u>Polaroid</u> analysis. With respect to this inquiry, Garnier makes clear that it has waived any claim of privilege.

Having determined that there are not papers which should be stricken from Defendant's motion, the court turns to analyze the merits of the motion.

III. <u>Disposition of the Summary Judgment Motion</u>

    A. <u>Lanham Act Claim</u>

As noted, Defendant concedes, for the purpose of this motion only, all elements of Plaintiff's trademark claims except for the element of likelihood of confusion. Defendant argues that, as to this essential element, Plaintiff cannot succeed and therefore summary judgment must be granted. To determine whether Defendant is entitled to summary judgment, the court considers the <u>Polaroid</u> factors.

       1. <u>Strength of Plaintiff's Mark</u>

The strength of a mark refers to its distinctiveness, <u>i.e.</u>, its ability to identify the source of the goods. <u>Streetwise Maps, Inc. v. Vandam, Inc.</u>, 159 F.3d 739, 743 (2d Cir. 1998). A mark is strong if consumers identify the mark with a particular source. The strength of a mark includes the concepts of "inherent distinctiveness" and "acquired distinctiveness." <u>Playtex</u>, 390 F.3d at 163. A mark's inherent distinctiveness is measured by the familiar four part scale, from lease distinctive to most: (1) generic; (2) descriptive; (3) suggestive and (4) arbitrary or fanciful.

Generic marks, such as labeling a container as "shampoo," are not entitled to trademark protection. Descriptive marks are entitled to protection only if accompanied by secondary meaning, i.e., if it can be shown that the use of descriptive term is associated with a particular product. Id.[1] Neither suggestive nor arbitrary marks require a showing of secondary meaning to be protected. Id. Acquired distinctiveness refers, as the term suggests, to the distinctiveness that the mark has acquired in the marketplace as to source. The more distinctive the inherent and acquired distinctiveness of a mark, the stronger the mark and the more likely it is that consumers will be confused by a new user of the mark. Playtex, 390 F.3d at 163.

The words "long" and strong" fall clearly within the category of "descriptive." Plaintiff has come forward with no evidence that consumers associate this descriptive term with Rush Industries. As such, the mark is weak and this factor favors Defendant.

2. Similarity Between the Marks

Plaintiff's mark is "Long 'n Strong" and Defendant uses the term "Long & Strong" to describe a subset of its hair care line. At first blush, the use of the same words appears to weigh this factor in favor of Plaintiff. Indeed, Plaintiff puts much emphasis on this fact. The use of the same words, however, is far from dispositive. Instead, the court must focus on the overall impression conveyed by the use of the words. See, e.g., Brennans, 360 F.3d at 133; Streetwise Maps, Inc.,159 F.3d at 744; Major League Baseball Properties, Inc. v. Opening Day Productions, Inc., 385 F. Supp.2d 256, 267 (S.D.N.Y. 2005). The use of different typefaces and the way in

---

[1] Garnier states that it concedes, for the purpose of this motion, the issue of secondary meaning. The court here refers to secondary meaning only to evaluate the Polaroid factor of strength of the mark and not to the issue of whether the mark is protected.

9

which terms are used can convey different impressions and weigh against a finding of confusion. Lang, 949 F.2d at 581-82; Omicron, 433 F. Supp.2d at 390-91.

Importantly, the use of a particular brand name in addition to the words at issue weighs against a finding of confusing similarity. Playtex, 390 F.3d at 164. As observed by the Second Circuit, the use of a "well-known house brand . . . significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products." W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 573 (2d Cir. 1993). The "prominence of the trade name" weighs heavily against a finding of confusion. Bristol-Myers Squibb Co. v. McNeill-P.P.C., 973 F.2d 1033, 1045-46 (2d Cir. 1992). That is precisely the case here.

Plaintiff uses the name "Long 'n Strong" as the brand name for its product. The words dominate the Plaintiff's packaging. Garnier uses the words, however, only as a descriptive term in a subset of the broad group of Garnier Fructis hair care products. The words appear in a blue rectangular box against a bright green label. Despite the fact that the words use are, essentially, the same, the impression created by the parties' use of the words is vastly different. The packaging on Garnier's hair care products is dominated by the Garnier Fructis name and the distinctive colors and typeface used. Despite the similarity of the words themselves, the way in which the words are used is dissimilar. This factor, therefore, fails to support a likelihood of confusion and weighs in Defendant's favor.

3. Competitive Proximity

This factor focuses on the degree to which the products compete with each other. Brennans, 360 F.3d at 134. Included in the court's consideration of this factor are: (1) market

proximity and (2) geographic proximity. These elements are considered to determine whether the two products have an overlapping client base. Id. Plaintiff markets its products via phone and mail order and the internet. While Defendant's products are available online, the products are sold in large retail establishments. Although the products are marketed primarily through different channels, Plaintiff has come forward with some evidence that the parties' share certain advertising outlets. The nature of the business suggests also that the parties share the same potential customers. Despite the fact that the parties' products are marketed at different price points, with Plaintiff's products being more expensive that those of Defendant, the court finds that this factor favors Plaintiff.

4. Actual Confusion

As to actual confusion, the Lanham Act seeks to prevent the passing off of goods as those of another. Major League, 385 F. Supp.2d at 267-68. A Plaintiff asserting trademark infringement typically offers evidence of consumer confusion by way of a well designed consumer survey. Mattel, Inc. v. Azrak-Hamway, Int'l., Inc., 724 F.2d 357, 361 (2d Cir. 1983); Vista Food Exchange, 2005 WL 2371958 *5. Plaintiff has neither conducted nor submitted the results of any consumer survey. While not bearing any burden on this issue, Defendant commissioned and submits the results of a consumer survey. In addition to criticizing Defendant's survey, Plaintiff relies on anecdotal evidence of confusion presented to the court in affidavits of Plaintiff's employees.

The factors to consider when weighing the probative value of a consumer survey are: (1) whether the "universe" is properly defined; (2) whether a representative sample of that universe was selected; (3) whether the questions asked were clear and non-leading; (4) whether sound

interview procedures were followed by interviewers lacking bias due to their knowledge of the litigation; (5) whether the data was accurately reported; (6) whether the data was analyzed in accord with accepted statistical principles and (7) whether the process was, overall, objective. Vista Food Exchange, 2005 WL 2371958 *5 (citations omitted).

Defendant's survey questioned 180 females over the age of sixteen who had recently purchased hair care products. After being shown the Garnier product, participants were asked a series of questions designed to determine whether there was any confusion between the Garnier product and those of Plaintiff. When asked to identify the product that they were shown, the vast majority of the participants recalled the product as a Garnier product. No participant referred to the product as "Long & Strong" (without use of the Garnier or Fructis names) and no participant referred to the product as Rush Industries' Long 'n Strong.

Plaintiff has not conducted a consumer survey. Instead, Plaintiff submits an expert report explaining to the court the problems with the Defendant's survey and asking that the court reject its findings. Additionally, Plaintiff submits affidavit testimony of its employees. This testimony is alleged to demonstrate actual confusion between the parties' products.

In consideration of the evidence submitted, the court concludes that there is little evidence of actual confusion. The court reaches this conclusion even if it were to accept each and every one of Plaintiff's quarrels with the reliability of Garnier's survey. First, the court notes that Defendant was not required to submit a consumer survey. While Plaintiff commissioned an expert to criticize that survey, it did not conduct a survey of its own. This weighs against Plaintiff's argument of consumer confusion. Star Indust., Inc. v. Bacardi & Co., Ltd., 412 F.3d 373, 388 (2d Cir. 2005) (plaintiff's failure to submit survey evidence weighs against finding of

confusion); Nora Beverages, Inc. v. The Perrier Group of Am., Inc., 269 F.3d 114, 123-24 (2d Cir. 2001) (same).

Plaintiff's affidavit testimony is entitled to little weight as to the issue of actual confusion between the parties' products. First, deposition testimony indicates that the submitted telephone call log, which purports to catalog instances of actual confusion, was prepared at the request of Plaintiff's president after commencement of this litigation. At least one of the individuals preparing the log included instances where she had seen Garnier's product advertised on television, using the Long & Strong words. Such instances say nothing about confusion between the products at issue. Further, most of the references in the log refer only to alleged instances where consumers stated that they thought they saw Plaintiff's products advertised, on television or in stores, at prices cheaper than those on the Plaintiff's website. Those log entries do not state that the products viewed were those of Garnier. Indeed, given the descriptive nature of the words "long" and "strong," it is entirely likely that consumers were referring to any number of products, and not to those of Garnier.

Given the facts that: (1) the logs do not appear to have been prepared in the ordinary course of business and (2) do not sufficiently identify Garnier's product, they constitute inadmissible hearsay and/or irrelevant evidence. Nora Beverages, Inc. v. The Perrier Group of Am., Inc., 269 F.3d 114, 123-24 (2d Cir. 2001) (recognizing district court's ability to consider anecdotal evidence of consumer confusion but also the broad discretion to rule upon the admissibility of anecdotes). Additionally, even crediting the testimony, the affidavits describe incidents that are so de minimis in nature as to offer little to support a finding of actual confusion. Id.; see also W.W.W. Pharm., 984 F.2d at 574 (upholding district court's rejection of

plaintiff's president's testimony regarding anecdotal instances of confusion). Further, the raising of questions to Plaintiff, as reflected in the telephone logs, is not necessarily evidence of confusion, but can be easily construed as supporting a lack of confusion that spurred inquiry. Nora Beverages, 269 F.3d at 123-24. In sum, Defendant's submission of survey evidence and Plaintiff's failure to conduct a survey, along with its weak anecdotal evidence, supports a finding that this factor weighs in favor of Defendant. Star Industries, 412 F.3d at 388 (finding that factor of actual confusion weighs in favor of defendant where defendant commissioned a survey, plaintiff did not and relied only on anecdotal evidence).

5. <u>Likelihood That Plaintiff Will Bridge the Gap</u>

This factor is intended to protect a senior user's use of the mark in the future should it choose to enter the Defendant's market. Star Industries, 412 F.3d at 387; W.W.W. Pharm., 984 F.2d at 574. As noted, Plaintiff and Defendant market their products via different channels. Plaintiff's business is telephone and internet based and Defendant's is retail store based. To the extent that the parties share channels fo marketing, there is no gap to bridge and this factor become irrelevant. Star Industries, 412 F.3d at 387.

The court will consider this factor, however, to the extent that Plaintiff plans to expand its retail store marketing and thereby bridge the gap that does exist. With respect to this issue, Plaintiff has submitted affidavit testimony that it intends to market its products in retail establishments. There is no evidence that this has occurred. Even if Plaintiff does bridge the marketing gap that exists, this will, if anything, lessen any confusion between the parties' products. If one were to place the products next to each other on store shelves, there would be absolutely no possibility as to confusion regarding source. The uniform packaging of the Garnier

14

Fructis hair care line set against Plaintiff's product would make clear that the products originate from different sources. It would also be abundantly clear that Garnier uses the words at issue to describe a subset of its hair care line while Plaintiff uses the words as its product name. This factor weighs in favor of Defendant.

6. <u>Defendant's Good Faith in Adopting its Mark</u>

When considering this factor, the court seeks to determine whether defendant adopted a mark to capitalize on the reputation and goodwill of a prior user. <u>Streetwise Maps, Inc.</u>, 159 F.3d at 745; <u>Major League</u>, 385 F. Supp2d. at 268. The mere knowledge of another's prior use of a mark is not necessarily an indicator of bad faith and may, indeed, be consistent with good faith. <u>Mushroom Makers, Inc. v. R.G. Barry Corp.</u>, 580 F.2d 44, 48 (2d Cir. 1978). Good faith can be found where "a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel." <u>W.W. W. Pharm.</u>, 984 F.2d at 575. Importantly, the Second Circuit has noted that it has "never" found bad faith in a case where there was no knowledge of a prior similar mark. <u>Star Industries</u>, 412 F.3d at 388.

There is no evidence of bad faith on the part of Defendant. The evidence before the court shows that Garnier conducted a trademark search prior to commencing use of the Long & Strong words. That search did not reveal any registration owned by Plaintiff. The fact that Garnier may have negotiated an arrangement with a third party to withdraw that party's registration is of no moment with respect to Plaintiff. It is neither an indication of bad faith nor of an intent to trade on Plaintiff's good will. This factor weighs in favor of Defendant.

7. <u>Quality of Defendant's Products</u>

No party has raised an issue as to the quality of the hair care products at issue.

Accordingly, this factor is entitled to no weight.

8. Sophistication of Purchasers

When considering the sophistication of buyers, the court considers the impression of the ordinary consumer making a purchasing decision under normal market conditions. Streetwise Maps, Inc., 159 F.3d at 746. Consumer sophistication can be shown by expert evidence or, in certain cases, based solely on the nature of the product or its price. Consumer sophistication is generally low when dealing in cheaper products sold in the "rough-and-tumble world of the supermarket" and there is therefore a greater likelihood of consumer confusion. Star Industries, 412 F.3d at 390.

Defendant, relying on Nina Ricci S.A.R.L. v. Gemcraft Ltd., 612 F. Supp. 1520 (S.D.N.Y. 1985), argues that purchasers of personal care products are careful as to their selection and therefore the level of sophistication is high and the likelihood of confusion is low. Nina Ricci, however, referred to women who used expensive perfumes as "discriminating" and "sophisticated" consumers who "know their perfume." Nina Ricci, 612 F. Supp. at 1529. While the parties' product price points are different, this case concerns a comparatively inexpensive product. In light of the fact, however, that neither party has submitted any real evidence of the relevant consumer's sophistication, the court makes no finding as to the weight of this factor.

B. Balancing of the Factors

The court's analysis of the Polaroid factors leads to the clear conclusion that there is no likelihood of confusion between Plaintiff's use of "Long 'n Strong" and Defendant's use of "Long & Strong." Defendant has come forward with clear evidence supporting the court's findings that the factors of strength of mark, similarity between the marks, actual confusion,

16

bridging of the gap and good faith all weigh decidedly in favor of Garnier. Plaintiff creates no issue of fact as to any of these factors. The factor of proximity weighs in favor of Plaintiff and the remaining factors of quality and sophistication are neutral. Thus, the overwhelming majority of factors relevant to the Polaroid analysis weigh in favor of Defendant.

While the majority of the factors weigh in favor of Defendant, the court's finding as to likelihood of confusion is not based upon this fact alone. Instead, upon review of all of the evidence, the court holds that there is no question but that "numerous ordinary prudent purchasers" are not likely to be misled or confused as to the source of the products at issue. Star industries, 412 F.3d at 390-91 (upholding district court's balancing of Polaroid factors). In light of the fact that Plaintiff is unable to prevail on the issue of likelihood of confusion, Defendant is entitled to the entry of summary judgment dismissing the Lanham Act claim.

C. State Law Claims

Plaintiff's failure to create an issue of fact as to the essential element of likelihood of confusion under the Lanham Act is also fatal to the common law trademark claim under New York law. Fireman's Assoc. of New York v. French Am. Sch. of New York, 2007 WL 1628372 *2 (3d Dep't. 2007). Accordingly, the court dismisses Plaintiff's New York State common law claim for trademark infringement.

The court reaches the same conclusion with respect to Plaintiff's claim pursuant to Section 133 of the New York General Business Law. Such a claim requires a showing that Defendant acted with the "intent to deceive or mislead the public." N.Y. Gen. Bus. L. § 133. This court's holding as to likelihood of confusion as well as the particular finding as to Defendant's good faith effectively forecloses any such claim. See Fireman's Assoc., 2007 WL

17

1628372 *2 (3d Dep't. 2007). Any common law claim for unfair competition is dismissed for the same reason. See Omicron, 433 F. Supp.2d at 395 (dismissing New York State common law claim where Lanham Act claim was dismissed and plaintiff failed to show bad faith).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike portions of Defendant's summary judgment motion papers is denied, Defendant's motion for summary judgment is granted and the motion to strike the jury demand has been rendered moot. The Clerk of the Court is directed to close the file in this case and to terminate all outstanding motions.

SO ORDERED.

/s/

Dated: Central Islip, New York
July 16, 2007